[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendants moved for summary judgment in this wrongful death action arising from an incident occurring during and in the course of the decedent's employment. For reasons stated below, the motion is granted in part and denied in part.
FACTS
The plaintiff's decedent was fatally injured when he was run over by a 1979 Ford vehicle operated by the defendant, Curtice Hathaway, a co-worker of the plaintiff's decedent. The vehicle was owned by Shipsview Corporation, the co-defendant and employer of Hathaway and the plaintiff's decedent. At the time of the incident, Hathaway was operating the vehicle within the scope of his employment. The plaintiff filed workers' compensation claims in Connecticut and Massachusetts on behalf of the estate of the plaintiff's decedent. (Reed's Deposition, pp. 12-15.)[1]
Counts one and two are brought against Hathaway, and count three is brought against Shipsview. In count one, the plaintiff alleges that Hathaway negligently operated the vehicle. This action is brought under General Statutes § 31-293a,[2] an exception to the exclusive remedy provision of Connecticut's Workers' Compensation Act, § 31-284.[3]
In count two, the plaintiff alleges, also under § 31-293a, that Hathaway recklessly operated the vehicle. Count three of the complaint alleges an intentional tort against Shipsview.
On April 28, 2000, the defendants moved for summary judgment as to all counts in the complaint on the ground that there are no genuine issues of material fact in dispute, and that they are entitled to judgment as a matter of law.[4]
DISCUSSION
Practice Book § 17-49 provides that a motion for summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material CT Page 937 fact and that the moving party is entitled to judgment as a matter of law." Miles v. Foley, 253 Conn. 381, 385, 752 A.2d 503 (2000).[5] "[A] material fact is one which will make a difference in the result of the case." (Internal quotation marks omitted.) Williams v. Best Cleaners,Inc., 237 Conn. 490, 500 n. 11, 677 A.2d 1356 (1996).
"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle [the party] to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.)Witt v. St. Vincent's Medical Center, 252 Conn. 363, 368, 746 A.2d 753
(2000). See also Practice Book § 17-45.
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital,252 Conn. 193, 201, 746 A.2d 730 (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist."Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). The existence of a genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence. Maffucci v. Royal Park Ltd.Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998).
The defendants move for summary judgment on all counts of the complaint on the ground that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Specifically, the defendants argue that: (1) Massachusetts law governs this matter; therefore, the plaintiff's action is barred under Massachusetts Workers' Compensation Law, and (2) even if Connecticut law applies: (a) the vehicle operated by Hathaway "at the time of the incident is specifically exempted from being actionable under . . . General Statutes [§]31-293a"; (b) "the authorizing statute for actions against fellow employees, [§ 31-293a], does not authorize actions for claims of recklessness as contained in the second count"; and (c) the undisputed facts presented do not satisfy the intentional tort requirement or the "substantial certainty test" set out in Suarez v. Dickmont PlasticsCorp., 242 Conn. 255, 264, 698 A.2d 838 (1997). The defendants submitted a number of exhibits in support of their memorandum of law.[6]
The plaintiff argues in opposition to the motion that: (1) Connecticut law, not Massachusetts law, applies to this action; (2) because General Statutes § 31-293a "authorizes actions for negligence in the operation of motor vehicles, the . . . claim for recklessness in the CT Page 938 operation of a motor vehicle in the second count is implicitly sanctioned"; (3) the vehicle operated by Hathaway "constitutes a `motor vehicle' for purposes of . . . § 31-293a"; and (4) the intentional tort requirements set out in Suarez v. Dickmont Plastics Corp. have been met for purposes of surviving summary judgment. The plaintiff attached supporting documentation to her memorandum of law.[7]
 Choice of Law
The threshold issue in deciding the defendants' motion is whether Connecticut or Massachusetts law governs the plaintiff's action. "In determining the governing law, a forum applies its own conflict-of-law rules. . . ." Gibson v. Fullin, 172 Conn. 407, 411, 374 A.2d 1061
(1977). Because the plaintiff brings this action under an exception to the exclusive remedy provided for in the Connecticut Workers' Compensation Act (the Act), the court must apply Connecticut's choice of law rules "traditionally applied to workers' compensation conflicts cases." Simaitis v. Flood, 182 Conn. 24, 31, 437 A.2d 828 (1980).[8]
Choice of law rules traditionally used to resolve workers' compensation conflicts cases, as discussed by the Connecticut Supreme Court inSimaitis v. Flood, are: (1) the "interest analysis" approach; (2) the "most significant relationship" analysis in 1 Restatement (Second), Conflicts of Law § 181, p. 537 (1983); and (3) the "place of employment relation" approach. Id., 31-34; see also Pimental v. CherneIndustries, Inc., 46 Conn. App. 142, 145-148, 698 A.2d 142, cert. denied, 243 Conn. 992, 701 A.2d 343 (1997) (recognizing and following the workers' compensation conflicts of law analyses set forth in Simaitis v.Flood). The court must therefore apply the interest analysis, the most significant relationship approach, and the place of employment relation analysis to the facts of this case in order to determine the choice of law issue.
The following facts are not in dispute.[9] The plaintiff's decedent and the defendant, Hathaway, were residents of Massachusetts at all times relevant to the complaint. The defendant, Shipsview, is a Massachusetts corporation with its principle place of business located in Massachusetts. The plaintiff's decedent and Hathaway were hired by Shipsview in Massachusetts, and were paid their wages by checks drawn on a Massachusetts bank. At the time of the alleged incident, Hathaway was operating the vehicle, owned by Shipsview, which was registered in Massachusetts and had a Massachusetts license plate. Also, at the time of the alleged incident, Hathaway was not acting in a supervisory capacity on behalf of Shipsview. Additionally, Shipsview's employees attended a two day safety course in Massachusetts prior to commencing work on the Connecticut project. CT Page 939
The record before the court contains additional facts relating to the contract between Shipsview and the State of Connecticut, Department of Transportation (CONNDOT), which are important in resolving the conflicts of law issue. These facts are as follows: Shipsview was awarded a $3,543,480 contract by CONNDOT in July, 1994, to paint highway bridges at four locations in Connecticut. (CONNDOT contract; Plaintiff's Memorandum, p. 4.) The CONNDOT contract required that Shipsview obtain a workers' compensation policy that complied with Connecticut law. The relevant contract provision states that: "A policy complying with the requirements of the statutes of the jurisdiction(s) in which work will be performed, covering all employees of the contractor." (CONNDOT contract, p. 27A.) In compliance with the CONNDOT contract, Shipsview was also required to establish a field office in Connecticut and maintain insurance on motor vehicles in accordance with the laws of Connecticut. Additionally, the plaintiff's decedent was working "almost exclusively" in Connecticut on the CONNDOT contract from late fall, 1994 until his death on June 29, 1995. In Simaitis v. Flood, the plaintiff brought a negligence action for personal injuries she sustained in a motor vehicle accident in which she was a passenger and the defendant was the driver, under General Statutes § 31-293a. Simaitis v. Flood, supra,182 Conn. 25-27. The accident occurred while the plaintiff and the defendant, both Connecticut residents, were traveling in Tennessee in the course of their employment for a company whose principal place of business was in Connecticut. Id., 27. The plaintiff and the defendant "worked alternately two weeks in Connecticut and two weeks `on the road,' [however, they] "were hired and maintained their principal place of employment in [Connecticut]." Id., 26. The plaintiff and defendant received workers' compensation benefits under . . . §§ 31-275 through31-355 [Connecticut's Workers' Compensation Act] as a result of the accident." Id., 27.
In moving for summary judgment, the defendant in Simaitis v. Flood
argued that the law of Tennessee, not Connecticut should apply to the action because the accident occurred in Tennessee. Id., 27. "Tennessee law . . . does not permit one employee to sue another in negligence for injuries arising within the scope of their employment. Connecticut law imposes no such barrier." Id., 27, citing General Statutes §§ 31-293,31-293a. The court, in resolving this conflicts issue, applied the three approaches for workers' compensation conflicts cases to the facts of the case: the interest analysis approach, the significant relationship approach, and the place of employment relation approach. Id., 31-34.
The first approach employed by the court in Simaitis v. Flood is the "interest analysis," as set forth in Thomas v. Washington Gas Light Co.,448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980). The issue before the court in Thomas v. Washington Gas Light Co., was "whether the CT Page 940 District of Columbia could award supplemental benefits to an employee who had already received compensation in the state of Virginia without violating the full faith and credit clause of the United States constitution." Simaitis v. Flood, supra, 182 Conn. 31. The Thomas v.Washington Gas Light Co. court held that, "`a State has no legitimate interest within the context of our federal system in preventing another State from granting a supplemental compensation award when that second State would have had the power to apply its workmen's compensation law in the first instance. The Full Faith and Credit Clause should not be construed to preclude successive workmen's compensation awards.'" Id., 32, quoting Thomas v. Washington Gas Light Co., supra, 448 U.S. 286.
In resolving the conflicts issue before it, the Simaitis v. Flood court initially noted that "the plaintiff received workers' compensation under Connecticut law [and neither party questioned] the propriety of such an award." Simaitis v. Flood, supra, 182 Conn. 32. The court then moved to an analysis of the facts before it under an interest analysis approach. Id. The court noted that "Connecticut's interest in compensating the injured employee, a Connecticut resident, to the fullest extent possible is clear and legitimate." Id. Another interest identified by the court was the interest in "permitting the plaintiff's employer, a Connecticut corporation, to recover from the defendant the amount of compensation already paid or to be paid in the future under [the Connecticut Workers' Compensation Act]." Id. In holding that Connecticut law would be the applicable law under an interest analysis, the court reasoned that, although the interests of Tennessee and Connecticut "coincide. . . . Tennessee's interest in limiting the liability of employers doing business in Tennessee is not of controlling importance . . . Tennessee has no legitimate interest in preventing Connecticut from providing the injured employee with a right of action for damages against a third party, particularly where both the employee and the alleged tortfeasor are Connecticut residents, the employer is a Connecticut corporation and the employee was hired and is principally employed in Connecticut." (Citations omitted; internal quotation marks omitted.) Id., 32-33.
In the present case, the defendants argue that Massachusetts law should apply because the "fortuity" of the location of the incident should not govern the choice of law.[10] They further argue that, because Massachusetts is the proper choice of law, the plaintiff is barred from bringing this action. The Massachusetts Workers' Compensation Act bars an employee who is injured in the course of his employment by the negligence of a fellow employee who is also acting in the course of his employment and, where compensation benefits are available through the Act, to recover from that fellow employee. Mass. Gen. Laws ch. 152, § 15
(1988)[11]; see also Saharceski v. Marcure, 373 Mass. 304, 307, CT Page 941366 N.E.2d 1245 (1977) ("[A]n employee covered under the [Massachusetts Workmen's Compensation Act] must look solely to his employer's compensation insurer (and any independent third-party tortfeasor) when he is injured in the course of his employment by the negligence of a fellow employee who is also acting in the course of his employment and that it makes no difference that the injury was received in another State."). Additionally, an employee may not bring a direct action against an employer, unless the employee effectively opted-out of the waiver provision Massachusetts Workers' Compensation Act. Mass. Gen. Laws, ch. 152, § 24 (1988).[12]
The plaintiff argues that, under the interest analysis, Connecticut is the proper choice of law because the contract between Shipsview and CONNDOT required Shipsview to maintain workers' compensation insurance in Connecticut; therefore Connecticut has interest in insuring that those employees covered under its workers' compensation act are fully compensated. Additionally, the plaintiff argues that the plaintiff's decedent was not a mere transient in the state where he was injured. Unlike the parties in Simaitis v. Flood, who were only traveling through the state in the course of their employment; Simaitis v. Flood, supra,182 Conn. 26; the plaintiff's decedent was working at an established Connecticut work site, for an employer who was required to carry Connecticut workers' compensation insurance. Although the interests of Massachusetts and Connecticut coincide, under an interest analysis, Connecticut's interest is controlling because the contract which brought the plaintiff and the defendants into the state required coverage under the Connecticut Workers' Compensation Act, a compensation scheme which permits tort actions against fellow employees for "wilful or malicious acts or the . . . [negligent] . . . operation of a motor vehicle as defined in section 14-1." General Statutes § 31-293a.
The Simaitis v. Flood court next applied the significant relationship approach provided in 1 Restatement (Second), supra, § 181. Simaitisv. Flood, supra, 182 Conn. 33-34. Section 181 provides: "A State of the United States may consistently with the requirements of due process award relief to a person under its workmen's compensation statute, if (a) the person is injured in the State, or (b) the employment is principally located in the State, or (c) the employer supervised the employee's activities from a place of business in the State, or (d) the State is that of most significant relationship to the contract of employment with respect to the issue of workmen's compensation under the rules of §§ 187-188 and 196, or (e) the parties have agreed in the contract of employment or otherwise that their rights should be determined under the workmen's compensation act of the State, or (f) the State has some other reasonable relationship to the occurrence, the parties and the employment." 1 Restatement (Second), supra, § 181. CT Page 942
The Simaitis v. Flood court, in applying the criteria set forth in § 181, held that Connecticut law, rather than Tennessee law, is the proper choice of law. Simaitis v. Flood, supra, 182 Conn. 33-34. The court reasoned that "[o]n the facts of this case, the right of action provided by the [Connecticut] Workers' Compensation Act is clearly available to the plaintiff under (b) [the principle place of employment], (d) [the place of most significant relationship to the contract of employment]; or (f) [the State has some other reasonable relationship to the occurrence, the parties and the employment] . . . The action may also be available to the plaintiff under criterion (c) [providing that the employer supervised the activities of the employee from a place of business in the state] upon a showing of additional supporting facts." Id.
The defendants in the present case argue that, under the conflicts of law approach advanced in § 181 of 1 Restatement (Second), Conflicts of Law, the significant relationship approach, Massachusetts would be the proper choice of law.
The plaintiff, on the other hand, argues that "the Restatement approach to choice of law in this case clearly yields Connecticut as the proper choice of law." The plaintiff asserts that the following factors, as outlined in § 181, support her assertion that Connecticut law, not Massachusetts law should govern this action: (a) the place of the injury was in Connecticut; (b) the principal location of employment could arguably be said to be in Connecticut "since the work under Shipsview's contract with CONNDOT was of such great extent and long duration in [Connecticut]"; (c) the place of supervision took place in Connecticut; (d) Connecticut, not Massachusetts, "has the `most significant relationship to the contract of employment' under sections 187, 188 and 196 of the 1 Restatement (Second), Conflicts of Laws"; and (f) Connecticut "has some reasonable relationship to the occurrences, the parties and the employment."
Applying the factors set forth in § 181 to the facts of this case, this court finds that Connecticut, not Massachusetts, has the most significant relationship to the present action. "On the facts of this case, the right of action provided by the [Connecticut] Workers' Compensation Act is clearly available to the plaintiff under" subsections (a), (b), (c), (d), and (f). Simaitis v. Flood, supra, 182 Conn. 33-34. The following facts support the submission that Connecticut law is the proper choice of law: (a) the plaintiff's decedent was injured in Connecticut, (b) the employment was principally located in Connecticut, since the plaintiff's decedent spent most of his time, while working on the CONNDOT contract, in Connecticut, (c) the employer, Shipsview, supervised the activities of the plaintiff's decedent from a field office CT Page 943 in Connecticut; (d) Connecticut has the "most significant relationship to the contract of employment with respect to the issue of workmen's compensation under the rules of §§ 187-188 and 196"; 1 Restatement (Second), supra, § 181; in so far as, while working on the CONNDOT contract, the plaintiff's decedent was covered by Connecticut workers' compensation insurance and could reasonably expect to be protected by the provisions of the Act; and (f) Connecticut "has some other reasonable relationship to the occurrence, the parties and the employment"; 1 Restatement (Second), supra, § 181; in that the CONNDOT contract required Shipsview to carry Connecticut workers' compensation insurance.
The third approach utilized by the Simaitis v. Flood court is Professor Larson's place of employment relation analysis. Simaitis v. Flood, supra, 182 Conn. 33-34. Professor Larson asserts that "the applicable law in a workers' compensation case is the law of the place of the employment relation, because `the existence of the employer-employee relation within the state gives the state an interest in controlling the incidents of that relation, one of which incidents is the right to receive and the obligation to pay compensation.'" Id., 34, quoting, 9 A. Larson L. Larson, Workmen's Compensation (2000) § 143.04(1), p. 143-23. "The relation. retains [the] situs until something happens that shows clearly a transference of the relation to another state. This transfer is usually held to occur when . . . the employee acquires in the foreign state a fixed or nontemporary employment situs." 9 A. Larson L. Larson, Workmen's Compensation (2000) § 143.04(2)(b), pp. 143-23 to 143-24.
In applying the employment relation analysis, the Simaitis v. Flood
court held, just as it did under the interest analysis and the significant interest approaches, that Connecticut's law was the proper law to apply. Simaitis v. Flood, supra, 182 Conn. 33-34. Because the plaintiff, who was merely passing through Tennessee, was hired in Connecticut, by a Connecticut corporation, and worked primarily in Connecticut, the court reasoned that, given the facts of the case "[t]here is no question that the employment relation . . . exists in Connecticut, not in Tennessee." Id., 34.
In the present case, the defendants argue that the employment relation between the plaintiff's decedent and Shipsview exists in Massachusetts, where the plaintiff's decedent was domiciled, hired and where Shipsview maintained its principal place of business; therefore, Massachusetts law should apply to this action.[13] The defendants further argue that Connecticut has, "at best . . . a `fortuitous and incidental relationship' to the controversy to be adjudicated." (Defendants' Memorandum, p. 9, quoting O'Connor v. O'Connor, 201 Conn. 632, 636,519 A.2d 13 (1986). CT Page 944
Conversely, the plaintiff argues that, under Professor Larson's employment relation approach, Connecticut prevails in the choice of law analysis, because the plaintiff's decedent "had acquired in Connecticut a fixed and nontemporary employment situs. The plaintiff asserts that the decedent's employment relation with Shipsview underwent a sea change after his initial hire in Massachusetts. Thereafter, he worked almost exclusively in Connecticut under the CONNDOT-Shipsview contract.
Under the facts of the present case, at the time of the incident which resulted in the death of the plaintiff's decedent, the place of the employment relation between Shipsview and the plaintiff's decedent was Connecticut. Therefore, under Professor Larson's approach, the proper choice of law is Connecticut law. Connecticut's relationship to the controversy is not "fortuitous and incidental" as described by the defendants. Although initially hired in Massachusetts, the plaintiff's decedent was working in Connecticut on the CONNDOT contract for several months prior to the incident and was covered by Connecticut workers' compensation insurance. While working at a Connecticut job site, the plaintiff's decedent slept at a camp site in Connecticut rather than returning to Massachusetts each night. The presence of the plaintiff's decedent in Connecticut was, therefore, not merely transient, like that of the parties in Simaitis v. Flood, who had only been driving through Tennessee when the motor vehicle accident occurred. Under Professor Larson's employment relation analysis, the plaintiff's decedent acquired a "fixed and nontemporary employment situs" in Connecticut for the duration of his employment on the CONNDOT contract. 9 A. Larson L. Larson, Workmen's Compensation (2000) § 143.04(2)(b), pp. 143-23 to 143-24.
An analysis of the facts under the three choice of law approaches "traditionally applied to workers' compensation conflicts cases" discloses that Connecticut law is the proper choice of law. Accordingly, "the right of action provided by the Connecticut Workers' Compensation Act cannot be denied the plaintiff. . . ." Simaitis v. Flood, supra,182 Conn. 31, 34.
Count One (Negligence as to Curtice Hathaway)
The plaintiff brings this negligence count against Hathaway, the fellow employee of the plaintiff's decedent at the time of the incident, under General Statutes § 31-293a, the motor vehicle exception to the exclusivity of the Act. The plaintiff alleges in count one: (1) just prior to the plaintiff's decedent being fatally injured, he was "assisting [the defendant] Hathaway in the operation of the 1979 Ford crane truck"; (2) the crane is located on the rear, flatbed portion of the vehicle; (3) Shipsview's employees, including the plaintiff's decedent and Hathaway, CT Page 945 had been using the vehicle's crane to lift barrels onto the flatbed of the vehicle; and (4) Hathaway was operating the crane's controls from the vehicle's flatbed while the plaintiff's decedent "was standing at or near the right side of the truck, near where he had been helping to lift the barrels onto the truck by means of the crane." (Complaint, count one, ¶ 3.) Additionally, the plaintiff alleges that Hathaway entered the cab of the vehicle after he completed operating the controls of the crane, in order to "drive the truck west on Route 691," and at the same time, the plaintiff's decedent, "based upon his previous training, crawled under the truck's cab to throw a switch to disengage the cable that powered the truck's crane in order to allow the truck to be properly driven." (Complaint, count one, ¶ 4.) As a result of "Hathaway . . . driving the truck forward," the plaintiff alleges that "[t]he truck's right rear wheels struck [the plaintiff's decedent], running over his upper torso and head and causing his death." (Complaint, count one, ¶ 4.) The plaintiff further alleges that Hathaway operated the vehicle negligently and carelessly, thus causing the "violent collision." (Complaint, count one, ¶ 5.) The defendants move for summary judgment, on count one, asserting two bases therefore.[14] First, the defendants argue that the vehicle involved in the incident is excluded from coverage under General Statues § 31-293a. The defendants assert that the vehicle involved in the incident is a crane and "was principally used off-road at various [work sites]."[15] Thus, the defendants first rely on the definition of "contractors' mobile equipment" in § 31-293a, to support their argument that the vehicle is excluded from coverage under the motor vehicle exception to the Act.[16]
Additionally, the defendants' rely on the excepted language contained in the definition of "motor vehicle" in General Statutes § 14-1(47), which is referenced in the authorizing statute, § 31-293a. This definition of "motor vehicle" excepts "special mobile equipment as defined in subsection (i) of section 14-165 and any other vehicle not suitable for operation on a highway." Section 14-1(47).[17] The defendants support their argument with "the description given by various witnesses that the vehicle involved in this accident was incidentally operated over public highways to get from one place to another." The defendants also assert that the vehicle was "generally brought to a work site and left there in order to assist in picking up heavy barrels and doing other moving at the job site."
In opposition,[18] the plaintiff argues that the vehicle involved in this incident qualifies as a "motor vehicle" under General Statutes § 31-293a.[19] The plaintiff further argues that, because the vehicle was driven on the open road, it is not the type of vehicle exempted under § 31-293a. Additionally, the plaintiff argues that the vehicle is a "truck mounted . . . crane"; therefore, it does not fall CT Page 946 under the definition of "special mobile equipment," as defined by §14-165, and thus, is not exempt from coverage under § 14-1, or the authorizing statute, § 31-293a.
General Statutes § 31-293a is a recognized exception to the exclusivity provision of the Act, and "precludes suits against fellow employees if workers' compensation coverage is available to the employee killed or injured during the course of his employment unless the action is based on the fellow employee's negligence in the operation of a motor vehicle." Kegel v. McNeely, 2 Conn. App. 174, 178, 476 A.2d 641 (1984). Section 31-293a, provides in pertinent part: "If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1."
An examination of the legislative history of this exception to the exclusivity provision of the Act reveals that "there is some evidence that the intention was to distinguish `simple negligence on the job' from negligence in the operation of a motor vehicle."[20] Dias v. Adams,189 Conn. 354, 359, 456 A.2d 309 (1983). Furthermore, the Act provides such an exception because "[u]nlike the special hazards of the work place, the risk of a motor vehicle accident is a common danger to which the general public is exposed. Particular occupations may subject some employees to a greater degree of exposure to that risk. The nature of the risk remains unchanged, however, and in many employments it is no greater than for the general public. The legislature has chosen, therefore, not to extend the immunity given to fellow employees by § 31-293 a to accidents having a less distinct relationship to the hazards of the employment. At the same time it has accorded the injured employee, in addition to workers' compensation, the same remedy he would have against a member of the general public who caused a motor vehicle accident." Id., 359-60; see also Ferreira v. Pisaturo, 41 Conn. Sup. 326, 329,574 A.2d 1324 (1989), aff'd, 215 Conn. 55, 573 A.2d 1216 (1990) (discussing the purpose of the motor vehicle exception in § 31-293a).
Interpretation of the phrase "motor vehicle," as used in General Statutes § 31-293a, is a matter of statutory construction. See e.g.,Ferreira v. Pisaturo, supra, 41 Conn. Sup. 337 ("There have been several summary judgment cases where the trial courts have ruled, as a matter of law, on whether a certain piece of equipment involved in an accident was a "motor vehicle' for purposes of § 31-293a."); see also GeneralMotors Corp. v. Dohmann, 247 Conn. 274, 286, 722 A.2d 1205 (1998) CT Page 947 (noting, generally, that "statutory construction is a question of law"). Furthermore, § 31-293a provides a private right of action against a fellow employee for the negligent operation of a "motor vehicle," as the term is defined in § 14-1(47). Dias v. Adams, supra, 189 Conn. 356-57. Section 14-1(47) defines "motor vehicle" as: "[A]ny vehicle propelled or drawn by any nonmuscular power, except . . . special mobile equipment as defined in subsection (i) of section 14-165 and any other vehicle not suitable for operation on a highway." Section 14-165(i) defines "special mobile equipment" as: "[A] vehicle not designed for the transportation of persons or property upon a highway and only incidentally operated or moved over a highway, including but not limited to, ditch-digging apparatus . . . road construction and maintenance machinery . . . self-propelled cranes and earth moving equipment. The term does not include house trailers, dump trucks, truck mounted transit mixers, cranes or shovels, or other vehicles designed for the transportation of persons or property to which machinery is attached." Additionally, § 31-293a exempts "contractors' mobile equipment such as bulldozers, powershovels, rollers, graders . . . cranes, forklifts . . . or other similar equipment designed for use principally off public roads . . . if the claimed injury involving such equipment occurred at the worksite," from the definition of "motor vehicle."
In Ferreira v. Pisaturo, the plaintiff brought suit under General Statutes § 31-293a, claiming that the co-worker of the plaintiff's decedent negligently operated a machine, characterized by the plaintiff as a motor vehicle, thereby causing the death of the plaintiff's decedent. Ferreira v. Pisaturo, supra, 41 Conn. Sup. 327. The defendant moved for summary judgment claiming that "the action is barred by the . . . `fellow employee bar' rule of . . . § 31-293a." Id., 328. At issue was whether the machine operated by the defendant was a "`motor vehicle' for purposes of the exception to the Workers' Compensation Act. . . ." Id.
In resolving this issue, the court applied the definitions relating to the term "motor vehicle" found in General Statutes §§ 31-293a, 14-1(30) [now § 14-1(47)], and 14-165(i), and held that the machine operated by the defendant was not a motor vehicle for purposes of § 31-293a. Id., 338-352. The court, relying on the affidavit of a construction equipment dealer, first reasoned that the machine was a type of a bucket loader, therefore, "by the language of § 14-1[(47)], as it refers to § 14-165(i), it is explicitly excluded from the definition of `motor vehicle.'" Id., 338-39. Additionally, the court held that the bucket loader fits the definition of "special mobile equipment" in § 14-165(i) because it is "not designed for the transportation of persons or property upon a highway and only incidentally operated or moved over a highway." Id., 342, quoting § 14-165(i). Therefore, it is not a motor vehicle. CT Page 948 The court noted that the bucket loader "is equipped with an enclosed cab containing only a single operator's seat and . . . there is no cargo area. . . . [I]f a vehicle can carry only the operator, it was not "designed for the transportation of persons.'"[21] Id., 342-43.
The court next dismissed the plaintiff's argument that the vehicle was suitable for operation on the highway and was not "only incidentally operated or moved over a highway, " thus it was a "motor vehicle" for purposes of General Statutes § 31-293a. Id., 343-44. "`[S]pecial mobile equipment' will, under some circumstances, operate on the highway. Thus, the fact that `special mobile equipment' may have some features and equipment . . . similar to those of `motor vehicles' that also travel on highways does not permit the rather circular argument that any vehicle with those features . . . cannot be `special mobile equipment.'" Id., 345.
This court finds that, as a matter of law, the vehicle in the present case that fatally injured the plaintiff's decedent is a "motor vehicle" for purposes of General Statutes § 31-293a. Under § 31-293a, the vehicle is not exempt as "contractors' mobile equipment" because the definition of "contractors' mobile equipment" exempts "cranes . . . or other similar equipment designed for use principally off public roads," and the vehicle involved in this action cannot be fairly and accurately described as a crane. The picture of the vehicle, submitted by the plaintiff, depicts a truck, consisting of a passenger cab, with a flat bed on which is mounted a crane. (Plaintiff's Memorandum, Exhibit M.) Furthermore, it is submitted that the court should find that, although the crane portion of the truck is used "principally off public roads," the vehicle maintains its function as a truck, which travels, more than just incidentally, on the highway. Furthermore, the motor vehicle is not exempt from coverage under the definition of "special mobile equipment," as defined in General Statues § 14-165(i), by way of §§ 14-1 and31-293a, because the vehicle is a "truck mounted . . . crane." Additionally, the vehicle in this action does meet the general exemption under § 14-165(i), which requires that the vehicle not be "designed for the transportation of persons or property upon a highway [and be] only incidentally operated or moved over a highway." Unlike the bucket loader in Ferreira v. Pisaturo, the vehicle in the present case has the capacity to transport passengers in the cab of the truck, and as previously noted, is primarily a truck, operated more than just incidentally on the highway.
Because the vehicle in the present case is a "motor vehicle" for purposes of General Statutes § 31-293a, the court must now consider the second ground of the defendants' motion as to count one. The defendants raise the issue of whether Hathaway was "operating," as the CT Page 949 term is used in the authorizing statute, the motor vehicle at the time the plaintiff's decedent was injured. The defendants' argue that Hathaway did not "operate" the vehicle in a manner that would enable the plaintiff to bring an action under § 31-293a. "The plaintiff in this case cannot prove that the crane was being operated in a manner contemplated by the statutes." The defendants argue that, although § 14-1, which is referred to in § 31-293a, does not define operation," "[t]he construction of the term `operation of a motor vehicle' does not include activities unrelated to the movement of the vehicle." Conti v. RosehillPoultry Co., 3 Conn. App. 246, 248. 486 A.2d 1145, cert. denied,195 Conn. 802, 491 A.2d 1103 (1985)). The defendants further argue that Hathaway "was not driving the [vehicle] at the time of the incident, and in fact the motor to operate the vehicle was not engaged at the time." The defendants support this argument by referencing Hathaway's deposition testimony. (C. Hathaway Deposition, pp. 93-94.)
The plaintiff objects to the defendants' motion, as to count one, arguing that the vehicle was being "operated" at the time the plaintiff's decedent was fatally injured. The plaintiff asserts that Hathaway did not testify that he did not drive the vehicle and that the engine to the vehicle was not running at the time of the incident. Rather, the plaintiff argues that Hathaway testified that the truck was on a highway decline and he caused the truck to roll forward by releasing the emergency brake and depressing the clutch. The plaintiff supports her argument with the deposition testimony of Chris Pelletier, a Shipsview employee, who testified that he "believed" the engine of the vehicle was running when the vehicle moved, and subsequently fatally injured the plaintiff's decedent. (C. Pelletier Deposition, p. 40.)
The term "operation of a motor vehicle" contained in General Statutes § 31-293a does not include "activities unrelated to movement of the vehicle. . . ." Dias v. Adams, supra, 189 Conn. 360. "If a coemployee is not engaged at the time of the fellow employee's injury in any activity related to driving or moving a vehicle or related to a circumstance resulting from the movement of a vehicle, the lawsuit does not fall within the exception of § 31-293a." Kegel v. McNeely, supra,2 Conn. App. 177-78 (holding that the motor vehicle involved in the accident did not meet the "operation" requirement of § 31-293 a because, at the time of the accident, the vehicle was immobile with its motor off and it "could not function to move the truck itself nor did it function or move so as to change the position of the crane or its boom."). "While it is true that `operation' is not defined in . . . § 14-1 [case law] clearly [indicates] that operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle." Davey v.Pepperidge Farms, Inc., 180 Conn. 469, 472 n. 1, 429 A.2d 943 (1980), and CT Page 950 cases cited therein. "There is nothing to suggest that the use of any mechanical or electrical device not an integral part of the motor vehicle being driven can be considered operation of the motor vehicle." Davey v.Pepperidge Farms, Inc., supra, 180 Conn. 472 n. 1.
The court finds that the defendants fail to establish that there exists no genuine issue of material fact relating to whether Hathaway was "operating" the vehicle at the time the plaintiff's decedent was injured. "While the court may view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Citation omitted; internal quotation marks omitted.) Mountaindale CondominiumAssn., Inc. v. Zappone, 59 Conn. App. 311, 315, 757 A.2d 608 (2000). Therefore, the non-moving party "must recite specific facts which contradict those stated in the movant's affidavits and documents" to show that there exists a general issue of material fact. Connecticut NationalBank v. Great Neck Development Co., 215 Conn. 143, 148, 574 A.2d 1298
(1990). Additionally, conclusory statements may not "constitute evidence sufficient to establish the existence of a disputed material fact. . . ." (Internal quotation marks omitted.) Hoskins v. Titan Value EquitiesGroup, Inc., 252 Conn. 789, 793-94, 749 A.2d 1144 (2000). The plaintiff demonstrates the existence of a genuine issue of material fact by "[contradicting] those [facts] stated in the [defendants'] documents."Connecticut National Bank v. Great Neck Development Co., supra,215 Conn. 148.
A review of Hathaway's deposition testimony reveals that the assertions made by the defendants are not supported by Hathaway's testimony. (C. Hathaway Deposition, pp. 93-94.) Hathaway testified that: "[W]e had two barrels to pick up that were in front of the truck, ten, twenty feet away from — we had to move the truck ten feet, say. . . . I was only rolling the truck to begin with anyway. I wasn't going to totally drive it. It was on a downhill." (C. Hathaway Deposition, pp. 93-94.) Contradictory evidence by the parties as to whether the injuries to the plaintiff's decedent were connected and related to Hathaway's control, movement, and direction of the vehicle dictate that, the defendants' motion for summary judgment, as to count one, must be denied.
Count Two (Recklessness as to Curtice Hathaway)
The plaintiff alleges in count two, that the "violent collision" resulting in the death of the plaintiff's decedent was caused by Hathaway's reckless operation of the vehicle. (Complaint, count 2, ¶ 5.) Specifically, the plaintiff alleges that Hathaway was reckless in either or both of the following ways: (1) Hathaway, "with reckless CT Page 951 disregard . . . drove [the vehicle] at an unreasonable rate of speed, in violation of [General Statutes] § 14-218a," and (2) Hathaway drove the vehicle in a reckless manner in violation of § 14-222. (Complaint, count 2, ¶ 5(a) and (b).)
The defendants argue that the plaintiff's claim that the incident was the result of Hathaway's reckless operation of the vehicle, is not actionable under General Statutes § 31-293a. The defendants argue that, because the plaintiff's cause of action is statutory in nature, the language of § 31-293a must be strictly construed. In interpreting the language of the statute, the defendants assert that § 31-293 a permits an action against a fellow employee under two circumstances: "if the [fellow] employee acted in a wilful or malicious manner, or the [fellow] employee was negligent in the operation of a motor vehicle," neither of which includes recklessness. Additionally, the defendants argue that, even if a claim for recklessness was recognized by §31-293a, the facts of the case do not support such a claim. Lastly, the defendants assert that "[a] cause of action claiming wanton and reckless conduct is separate and distinct from a cause of action alleging negligence.
In opposition, the plaintiff argues that General Statutes § 31-293a
implicitly sanctions a cause of action for recklessness for the reason that recklessness is inherently a species of negligence and therefore by permitting a negligence action the statute permits a recklessness action. The plaintiff relies on § 611 of the Connecticut Jury Instructions, entitled "Reckless Driving," to support her argument.
"In interpreting the language of a statute, the words must be given their plain and ordinary meaning and their natural and usual sense unless the context indicates that a different meaning was intended. . . . When the language is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. . . . Indeed, [a] basic tenet of statutory construction is that when a statute . . . is clear and unambiguous, [generally] there is no room for construction. . . ." (Citations omitted; internal quotation marks omitted.) Mattatuck Museum-MattatuckHistory Society v. Administrator, 238 Conn. 273, 278-79, 679 A.2d 347
(1996); see also General Motors Corp. v. Dohmann, supra, 247 Conn. 286
(noting, generally, that "statutory construction is a question of law").
The motor vehicle exception in General Statues § 31-293a, provides a right of action based on the "negligent operation of a motor vehicle. . . ." (Emphasis added.) § 31-293a. Because this language is "plain and unambiguous, [the court] need look no further than the words themselves"; Mattatuck Museum-Mattatuck History Society v.CT Page 952Administrator, supra, 238 Conn. 279; and imply a separate and distinct action for the reckless operation of a motor vehicle. Because the language of § 31-293a does not provide a right of action for the reckless operation of a motor vehicle by a fellow employee, as alleged by the plaintiff, the second count of the complaint must fail as a matter of law. The defendants' motion for summary judgment as to count two is granted.
Count Three (Intentional Tort as to Shipsview Corporation)
In count three, the plaintiff alleges an intentional tort against Shipsview "under the common law exception to the exclusivity of the Workers' Compensation Act set forth in Suarez v. Dickmont [PlasticsCorp.], 242 Conn. 255, 261, [698 A.2d 255] (1997) . . . known as the substantial certainty standard." (Complaint, count 3, ¶ 13.) In this count, in which paragraphs one through four and seven through eleven of count one are incorporated, the plaintiff alleges that the "violent collision" that resulted in the death of the plaintiff's decedent was caused by "the willful and/or serious misconduct of . . . Shipsview." (Complaint, count 3, ¶ 5.) The plaintiff further alleges that Shipsview either authorized or directed its employees, including the plaintiff's decedent, to operate the vehicle under a number of circumstances, in which Shipsview knew, with substantial certainty, that these directions would "result in death or serious injury to its workers, including the . . . decedent" and that as a result of Shipsview misconduct, the plaintiff's decedent was fatally injured (Complaint, count 3, ¶¶ 5, 6, 12.) More specifically, the plaintiff alleges that the death of the decedent, "who was run over by the truck while underneath the chassis to disengage the crane cable at the transmission . . . was the result of . . . [Shipsview's] conduct in directing or authorizing the activities . . . which made the . . . death [of the plaintiff's decedent] substantially certain to occur." (Complaint, count 3, ¶¶ 12.)
The defendants move for summary judgment on this count asserting that "the plaintiff has failed to marshal sufficient evidence to substantiate a claim under the `substantial certainty test' under the Suarez analysis."[22] Under the "alter-ego" requirement to the exclusive remedy of the Act, the defendants argue that the plaintiff has not alleged that an individual employee of Shipsview "committed intentional acts, nor that any such individual was acting as the `alterego of . . . Shipsview.'" The defendants assert that the plaintiff is unable to "elicit any testimony . . . that any superior officer of Shipsview . . . directed, instructed or authorized employees of Shipsview . . . to crawl under the truck's cab in order to engage and/or disengage the [power take-off] PTO lever which is alleged to have been broken and inoperable CT Page 953 from the truck's cab."[23] The defendants discuss in their memorandum the deposition testimony of Christopher Pelletier, Curtice Hathaway, fellow employees, as well as, David Hathaway and Donald Pelletier, both of whom were Shipsview foremen at the time of the incident. The defendants assert that the testimony of these deponents support their argument that there is no evidence that "Shipsview, or any of its superior officers, directed the decedent to crawl under the truck and disengage the PTO lever, particularly while the truck was in operation." The defendants additionally note in their reply brief that the deposition testimony of Jeffrey Tuomala, a former Shipsview employee, who testified that he was directed to crawl under the truck to operate the switch, lacks credibility.
Under the second element of the exception to the exclusivity remedy of the Act, the substantially certain requirement, the defendants argue that "the plaintiff has failed . . . to substantiate a claim that the defendant believed that the consequences of its acts were substantially certain to follow from the acts. . . ." Additionally, because no one instructed the plaintiff's decedent to crawl under the truck and no one witnessed him actually crawl under the truck, the defendants argue that there is no evidence that the plaintiff's decedent, at the time of the incident, was actually attempting to disengage the PTO lever, therefore "the issue as to whether a specific act caused the alleged injury [is left to] surmise, guess, conjecture, and speculation." The defendants also submit an affidavit from Shipsview's foreman, Donald Pelletier, in which Pelletier states that he "never instructed [the plaintiff's decedent] to go under the crane for purposes of engaging or disengaging the power take off (PTO) switch. . . ." (D. Pelletier's Affidavit, ¶¶ 2-3.)[24] Additionally, the defendants note in their reply brief that the affidavit submitted by the plaintiff of Michael Miller, a consulting professional engineer, is based on "Miller's legal interpretations and speculations as to the decedents' actions and motives," and should not be considered for purposes of this summary judgment. (Defendants' Reply Brief, p. 1-2.)
In opposition, the plaintiff asserts that she produced sufficient evidence to support an intentional tort claim under the substantial certainty standard. The plaintiff first argues that she has met the "alter-ego" requirement in that it is the conduct of Chris Deligiannidis, Shipsview's president, that is at issue. The plaintiff next argues that she presented facts that clearly implicate the defendant corporation's president in conduct that was substantially certain to cause the decedent to injure himself in the manner in which he was injured. The plaintiff relies on the deposition testimony of Jeff Tuomala who states, in part, that: (1) Deligiannidis knew that because the power take-off (PTO) switch was broken, it had to be manually operated; (2) CT Page 954 Deligiannidis knew that Shipsview employees were manually operating the PTO switch; and (3) Deligiannidis did not have the PTO switch repaired until after the death of the plaintiff's decedent. The plaintiff also submits an affidavit from Michael Miller, a consulting professional engineer, to further support her argument that Deligiannidis authorized his employees to manually engage and disengage the PTO switch and knew "there was a substantial certainty of serious injury or death in the use of this procedure." (Miller's Affidavit, ¶¶ 7-10.)
Our Supreme Court has "consistently . . . interpreted the exclusivity provision of the act, General Statutes [§] 31-284(a), as a total bar to common law actions brought by employees for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct."[25] Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 106,639 A.2d 507 (1994), rev'd on other grounds, 242 Conn. 255, 698 A.2d 838
(1997).[26] (Suarez I) To overcome this exclusivity bar and establish an intentional tort claim against an employer, a plaintiff employee must "[prove] either that the employer actually intended to injure the plaintiff (actual intent standard) or that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur (substantial certainty standard.)" Suarezv. Dickmont Plastics Corp., 242 Conn. 255, 257-58, 698 A.2d 838 (1997). (Suarez II)
To prevail on an intentional tort claim against an employer under either the actual intent standard or the substantial certainty standard, the individual against whom the plaintiff brings the action must be the employer or "identified as the alter ego of the employer." Jett v.Dunlap, 179 Conn. 215, 219, 425 A.2d 1263 (1979). The "`alter ego' exception may be applicable in instances in which the assailant is of such rank in the corporation that he may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity." (Internal quotation marks omitted.) Mingachos v. CBS, Inc.,196 Conn. 91, 99, 491 A.2d 368 (1985). "[A]ttribution of corporate responsibility [is] `appropriate' if the alter ego predicate [is] met but . . . it [is] `inappropriate' where the actor [is] merely a foreman or supervisor. . . ." Id., 99 n. 11; see also Diaz v. Normag, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 343141 (July 7, 1999, Gormley, J.) ("Whether a managerial employee is sufficiently up the chain of command to be considered an alter ego is a question of fact.").
Because "the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot . . . be CT Page 955 stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting the injury. . . . What is being tested is not the degree of gravity of the employer's conduct, but, rather, the narrow issue of intentional versus accidental conduct." (Citations omitted; internal quotation marks omitted.) Suarez II, 242 Conn. 279. "Both the action producing the injury and the resulting injury must be intentional. . . . [The] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Therefore, to escape the exclusivity of the act, the victim of an intentional injury must rely on the intended tort theory or the substantial certainty theory. Under the former, the actor must haveintended both the act itself and the injurious consequences of the act.Under the latter, the actor must have intended that act and have knownthat the injury was substantially certain to occur from the act." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 279-80.
In the present case, the plaintiff alleges injury under the substantial certainty theory. "The substantial certainty test provides for the intent to injure exception to be strictly construed and still allows the plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself." (Internal quotation marks omitted.) Id., 258. "Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case. . . . [W]hether the actor knows that the consequences of his . . . conduct are certain or substantially certain to result from his . . . act and proceeds with the conduct, so that he . . . should be treated by the law as though he . . . in fact desired to produce the result, is a question of fact for the jury." (Citation omitted.) Suarez I, supra, 229 Conn. 111.
The defendants fail to demonstrate that there exists no genuine issue of material fact as to whether the injuries sustained by the plaintiff's decedent were "substantially certain" to follow from the conduct of Shipsview's president so as to satisfy the narrow exception to the exclusivity provision of the Act. Suarez I, supra, 229 Conn. 100-101 (reversing the granting of the defendant's motion for summary judgment on the ground that a genuine issue of material fact exists as to whether the defendant knew that the occurrence of the plaintiff's injury was a substantial certainty). The plaintiff has "[raised] an issue of material fact regarding the defendant's conduct toward the [plaintiff's decedent] and the defendant's knowledge that the . . . injury [to the plaintiff's CT Page 956 decedent] was substantially certain to occur." Id., 111.
"A specific intent to produce injury is not the only permissible inference to be drawn from [the] defendant's . . . [conduct], but it is one that a jury should be permitted to consider. It is for the finder of fact, not the court on summary judgment, to determine what inferences to draw. . . . [S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (Citations omitted; internal quotation marks omitted.) Id. By contradicting the facts stated in Shipsview documents and submitting evidence that Shipsview's president knew that the PTO switch was broken and was being manually operated, the plaintiff has demonstrated the existence of genuine issues of material fact. Connecticut National Bankv. Great Neck Development Co., supra, 215 Conn. 148. Additionally, the defendants have raised a genuine issue of material fact by questioning the credibility of Tuomala's deposition testimony. A "question of credibility between the parties . . . raises an issue of fact which the trial court cannot resolve on a motion for summary judgment." Suarez I, supra, 229 Conn. 107. For all the foregoing reasons the defendants' motion for summary judgment, as to count three, is denied.